UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.         ) | CRIMINAL NO. 04-10176-RWZ |
| ) | |
| ITZA RUIZ       ) | |

DEFENDANT'S SENTENCING MEMORANDUM

INTRODUCTION

Itza Ruiz pled guilty on April 4, 2005 to a twenty three-count indictment charging her with unlawfully using the identity (name, social security number and date of birth) of a United States citizen in order to obtain student loans, a mortgage and credit cards. She is also charged with making false statements in immigration documents. All counts in the indictment are related to her use of the false identity. The probation department has determined her guideline sentencing range is 12 -18 months. PSR ¶ 63. This guideline sentence is primarily driven by the loss amount which probation calculated to be $36,022. PSR ¶ 151. Ms. Ruiz requests that the court impose a sentence of time served (one day) followed by a three year term of supervised release, which is a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). United States v. Booker, 125 S.Ct. 738 (January 12, 2005).

Under the circumstances of this case which include: (1) that the reason Ms. Ruiz committed the crimes was in order to gain employment and remain in the United States as a contributing member of society; (2) that the loss amount does not reflect the true "nature and circumstances" of her offense and significantly overstates her culpability because she never intended to steal the money she borrowed rather intended to repay it in full as evidenced by the fact that she was repaying the debts on time, and had established "good credit" (PSR ¶ 13); (3) that as a result of this case she will lose her LPR status and be deported and (4) the unlikelihood of recidivism, a sentence of three years of supervised release is reasonable, sufficient and not greater than necessary.

## FACTS

I.  The Offense

The instant offense occurred between October 1999 and December 2003 and involved Ms. Ruiz, unlawfully using the name, date of birth and social security number of Aixa Gomez, a United States citizen.  Ms. Ruiz also made false statements when she made a legitimate application under her true name for lawful permanent residence (LPR).  In her application, she stated that she had never used another name when she had in fact used the name Aixa Gomez and that she was not working when in fact she was

working as an administrative assistant/data entry clerk at Dunkin Donuts Corporation.

Ms. Ruiz purchased the false identity in order to obtain employment, to take out student loans to attend college to study English, to apply for credit cards and establish good credit, and to obtain a mortgage and a personal loan.  PSR ¶ 21-47.

II.  Ms. Ruiz's History[1]

Itza Ruiz is forty years old and is married to co-defendant Heriberto Ruiz.  They have two small children Leritza age 5 and Heri age 8 months.  Ms. Ruiz does not have additional family members in the United States.

Ms. Ruiz and her two brothers were born and raised in Panama by a single mother who worked several different jobs in order to make ends meet.  A good student who graduated from high school in Panama, Ms Ruiz earned a scholarship to attend college in Venezuela.  In 1998 after graduating from the Universidad Technologia in Caracas Ms. Ruiz returned to Panama to care for her mother who died in 1990.  She then returned to Venezuela for better employment opportunities.  In Venezuela, Ms. Ruiz obtained work as a computer systems analyst in a shipping company.  Three years later she had to leave her job in order to return to Panama to help care for her brother Raul Galvin who had contracted AIDS.

---

[1] Facts are from PSR.

After her brother died she remained in Panama teaching computer classes at two local universities.  Because she was not paid well in her teaching positions, she obtained a job in the computer department of a large Panamanian company where she remained for three years until it closed.  Due to the weak economy in Panama Ms. Ruiz was unable to find new employment.  It was at this time that Ms. Ruiz decided to come to the United States.  She obtained a Visitor's Visa and traveled to Massachusetts where she met her future husband Heriberto Ruiz.

    Once in Massachusetts, Ms. Ruiz immediately sought to improve herself by enrolling in English as a second language course at Bunker Hill Community College.  Due to her immigration status, she was not able to legally obtain work in the United States.  For this reason she purchased the name, social security number and date of birth of Aixa Gomez.  She began working as soon as possible and has maintained steady employment up until her arrest in this case.  Ms. Ruiz first worked in various data entry and clerical positions through an employment placement agency.  She then obtained work as an administrative assistant and data entry clerk at Dunkin Donuts Corporation in Medford where she remained for three years until her arrest in this case.  Her employers described her as a very good employee who was dependable and "had a great work ethic."  Ms. Ruiz also continued

to attend college studying English and computer technology.  As a result, she has become proficient in English.

After her marriage to Heriberto Ruiz on August 13, 2002, Ms. Ruiz and her husband petitioned INS for her lawful permanent residence.  On October 25, 2002 she was assigned a social security number and was permitted to work legally.  On June 10, 2003 she was granted LPR status and issued a "green card."

She was pregnant at the time of her arrest.  Ms. Ruiz's second child, Heri was born on January 5, 2005.  Not surprisingly, her pregnancy was difficult due to the stress and uncertainty surrounding this federal case.  The stressful circumstances also led to a temporary separation of Ms. Ruiz from her husband her only source of support financially and emotionally.

Prior to this offense, Ms. Ruiz had never been arrested or had any involvement with the criminal justice system.

ARGUMENT

Under the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005) a court must look to 18 U.S.C. § 3553(a), and impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in § 3553(a)(2).  Booker, 125 S.Ct. at 764-65.  In imposing sentence, the Court must consider all of the

factors set forth in § 3553(a)(1)-(7). The sentencing guidelines are no longer binding on the court. Id.

1. Nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1)).

The nature and circumstances of this offense are not those of a typical fraud case. Although the government sought a 23 count indictment, Ms. Ruiz's crime involves one course of conduct, illegally using the personal identifiers of Aixa Gomez in order to gain employment and go to school. Ms. Ruiz never intended to steal anything from any of the financial institutions and fully intended to pay back all that she borrowed. This is clear from the fact that throughout the period in which she lived and worked under the assumed name of Aixa Gomez (approximately 5 years) she never defaulted or missed any payments. Instead, Itza Ruiz as Aixa Gomez had developed a "good credit" rating. Furthermore, unlike most credit card/loan fraud cases, Ms. Ruiz gave some true and accurate information about herself including her address for billing purposes. In other words, she was not attempting to hide from her creditors.

The history and characteristics of Ms. Ruiz must also be considered. Ms. Ruiz is forty years old and is married to co-defendant Heriberto Ruiz. They have two small children Leritza age 5 and Heri age 8 months. Ms. Ruiz does not have other family members in the United States.

6

Ms. Ruiz has a history as a hard working, law abiding productive member of society whose instant course of conduct is entirely out of character. She was a good student who graduated from high school in Panama and earned a scholarship to attend college in Venezuela. After graduating from college, Ms. Ruiz returned to Panama to live with and care for her mother. After her mother died she then returned to Venezuela where there were better employment opportunities. She was employed in Venezuela for three years leaving only because she felt a family obligation to return to Panama to assist her brother Raul who was very ill with AIDS. She found employment in Panama first as a teacher and then for three years as a computer systems manager until the company went out of business. At that time the economic situation in Panama was poor and Ms. Ruiz was unable to find a new job. She came to the United States in search of a better life.

Once in Massachusetts, she immediately sought to improve herself by enrolling in English as a second language course at Bunker Hill Community College. She began working as soon as possible and has maintained steady employment up until her arrest in this case. Her employers found her to be a hard working, conscientious and reliable employee. Ms. Ruiz also continued studying English and computer technology. She has worked hard to become proficient in English.

In sum, throughout her life Ms. Ruiz has been a loving caretaker to her family, a diligent student and a hard working contributor to society. An examination of Ms. Ruiz's past suggests that these crimes represent a marked departure from an otherwise respectable and irreproachable way of life. Ms. Ruiz has had no previous involvement with the criminal justice system.

2. <u>The need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" (§ 3553(a)(2)(A))</u>.

A sentence of time served and three years supervised release is adequate to reflect the goal of this factor. Because of Ms. Ruiz's immigration status she will be deported and will not be permitted to return to the United States. In light of her deportation and exclusion and the nature and circumstances of the offense as discussed above, this is significant punishment for a forty year old woman who has never been arrested before.

3. <u>The need for the sentence "to afford adequate deterrence to criminal conduct" (§ 3553(a)(2)(B))</u>.

The sentence affords adequate deterrence especially where had she not committed these crimes she could have legally obtained lawful permanent residence and ultimately citizenship in the United States.

    4.    The need for the sentence "to protect the public from further crimes of the defendant" (§ 3553(a)(2)(C).

As stated above the data indicates that Ms. Ruiz will remain a law abiding citizen and not revert to criminal conduct.

    5.    The need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" (§ 3553(a)(2)(D)).

This factor is not applicable in this case.

    6.    The "kinds of sentences available"(§ 3553(a)(3)).

The proposed time served (one day) followed by three years of supervised release is available to the court.

    7.    The "kinds of sentence and sentencing range" established under the Guidelines and "any pertinent policy statement"(§ 3553(a)(4) & (5)).

The probation department has determined Ms. Ruiz's guideline sentencing range to be 12-18 months. Under a sentencing guideline analysis, because the loss amount of $36,000 determined under U.S.S.G. § 2B1.1(b)(1) substantially overstates the seriousness of the offense, a downward departure is warranted. U.S.S.G. § 2B1.1 n. 15(B); United States v. Rostoff, 53 F.3d 398 (1st Cir. 1995); United States v. Monaco, 23 F.3d 793 (3rd Cir. 1994); United States v. Pimental, 367 F. Supp. 2d 143 (D. Mass. April 2005). In addition, the circumstances of this case fall outside the "heartland" cases covered by the guideline. U.S.S.G. § 5K2.0, Koon v. United States, 518 U.S. 81 (1996).

The loss amount of $36,000 which drives the U.S.S.G. § 2B1.1 guideline sentencing range by adding six offense levels is an inaccurate indicator of culpability under the circumstances of the present case.  As stated above, Ms. Ruiz illegally used the personal identifiers of Aixa Gomez to gain employment and take out loans but she never intended to steal anything and fully intended to pay back all debts.  She never defaulted or missed any payments.  Itza Ruiz under the name of Aixa Gomez had developed a "good credit" rating.  See <u>United States v. Monaco</u>, 23 F.3d 793, 798-799 (3rd Cir. 1994) (a seven-level enhancement based upon a loss of more than $120,000 overstated criminality where defendant's intent was not to steal money outright but to expedite a government loan that was to be repaid).  Here, as "[i]n many cases . . . the amount stolen is a relatively weak indicator of the moral seriousness of the offense or need for deterrence."  <u>United States v. Emmemegger</u>, 329 F. Supp. 2d 416, 427 (S.D. N.Y. 2004).

The purpose of the guideline in issue is to protect the banking industry from individuals using false names to run up significant debts which they have no intent to repay.  Here, Ms. Ruiz fully intended to repay, she had the real ability to do so and was repaying on schedule.  In other words, but for the immigration requirements and the delay in obtaining her LPR

status, Ms. Ruiz could have taken all of the same actions legally.

Another reason that the loss amount overstates Ms. Ruiz's criminal conduct is that there were 20 credit cards for which she made no unauthorized charges. Under U.S.S.G. § 2B1.1 n. 3(F)(I) a loss amount of $500 was attributed to each. These credit cards resulted in no actual loss but add $10,000 (20 x 500) to the loss figure under the guideline. Under the circumstances of this case, where there is no evidence that Ms. Ruiz intended any loss and there is no actual loss, this results in a gross overstatement of the loss making loss a poor proxy for the gravity of Ms. Ruiz's offense.

For all of the reasons stated above, the loss amount significantly overstates the seriousness of the conduct and this case is outside "heartland" cases under this guideline.

> 8. The "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§ 3553(a)(6)).

This is Ms. Ruiz's only criminal offense. A sentence of time served followed by three years of supervised release is significant punishment. This sentence will not lead to unwarranted sentence disparities because the low end of the guidelines is 12 months and even under a pre-Booker guideline analysis a departure to a non-prison sentence is warranted.

CONCLUSION

    For the foregoing reasons, Itza Ruiz requests that the court impose a sentence of time served (one day) followed by three years supervised release.

                                      ITZA RUIZ
                                      By her attorney,

                                      /s/ Catherine K. Byrne
                                      Catherine K. Byrne
                                          B.B.O. #543838
                                      Federal Defender Office
                                      408 Atlantic Avenue, 3rd Floor
                                      Boston, MA  02110
                                      Tel: 617-223-8061

September 6, 2005